Gilbert vs. Dutruit and others.

GILBERT, Appellant, vs. DUTRUIT and others, Respondents.

*November 30 — December 17, 1895.*

*Construction of statutes: Tax titles: Purchase of tax certificates by county treasurer: Division of county.*

1. Where the words of a statute express clearly the sense and intention there is no room for the application of rules for judicial construction.

2. Sec. 1143, S. & B. Ann. Stats.,— making it unlawful for a county treasurer to purchase, directly or indirectly, property sold for taxes at any tax sale, or any tax deed held by the county or by any other person, "except for and on behalf of the county, as provided by law," or to be "directly or indirectly interested in the purchase of property sold as aforesaid, at any such tax sale, or in the purchase of any tax certificate or tax deed, except as hereinbefore provided,"— applies to all tax certificates issued by his county, whether issued during his incumbency of the office or otherwise, and whether purchased of the county or of some vendee of the county.

Gilbert vs. Dutruit and others.

3. But where territory is detached from one county and created into a new county by an act providing that all tax certificates held by the old county on lands situated in the new county should be assigned to such new county, the county treasurer of the old county is not prohibited by sec. 1148, S. & B. Ann. Stats., from purchasing such certificates after they have been so assigned, they being then governed by the same rules as if they had been issued by the new county.

APPEAL from a judgment of the circuit court for Marathon county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed.*

This is an action of ejectment, brought by plaintiff, who is owner of the land involved unless his title is cut off by tax deeds under which defendants *Sturtevant* and *Sophia L. Dutruit* claim title. In 1884 and 1885 the land was sold for taxes to Lincoln county, and certificates were issued accordingly. During the year 1887 the defendant *E. Dutruit* was treasurer of Lincoln county, and the certificates referred to were owned by such county at the time he entered upon the duties of his office. By an act of the legislature approved April 11, 1885, as amended by an act approved March 26, 1887, Oneida county was created out of part of the territory of Lincoln connty, and it was provided that all certificates upon lands in the territory set off in the formation of the former county should, on or before the 1st day of July, 1887, be assigned to the new county and delivered to its treasurer. It was further provided that on all such certificates tax deeds should be issuable by the proper officer of Oneida county, instead of Lincoln county, and that all redemptions from such certificates should be made to the proper officer of the former county. The certificates in question were upon lands situated in such new county, and, pursuant to law, they were assigned accordingly and became the property of such county. Thereafter defendant *Sturtevant* purchased the same of Oneida county, and defendant *E. Dutruit* was directly or indirectly interested in such purchase. Thereafter tax deeds were issued on such certificates, and at the time of the com-

mencement of this action the tax-deed title was in defendants *Sturtevant* and *Sophia L. Dutruit.* The trial court held the tax deeds valid, and rendered judgment accordingly, from which plaintiff appealed.

For the appellant there was a brief by *Brown & Pradt,* and oral argument by *Neal Brown.*

For the respondents there was a brief by *Hetzel & Smart,* and oral argument by *E. M. Smart.*

MARSHALL, J. This case turns upon the construction of sec. 1143, S. & B. Ann. Stats., which reads as follows: " It shall not be lawful for any county treasurer, or any county clerk, or for any of their deputies or clerks, or any other person for them, or any of them, to purchase, directly or indirectly, property sold for taxes at any tax sale, or tax deed held by the county or by any person or persons whomsoever, except for and on behalf of the county, as provided by law; *nor shall any such treasurer, county clerk, or any of their deputies or clerks, or any other person for such treasurer, county clerk, or any of their deputies or clerks, be directly or indirectly interested in the purchase of any property sold as aforesaid, at any such tax sale, or in the purchase of any tax certificate or tax deed, except as hereinbefore provided; and any tax certificate or tax deed purchased or issued, or any purchase of property made in violation of the provisions of this section, shall be null and void;* and no money received into the county treasury for any such tax certificate shall be refunded to the purchaser or to any person on his behalf."

The learned circuit judge held that the words, " or in the purchase of any tax certificate or tax deed, except as hereinbefore provided," refer to tax certificates issued during the treasurer's incumbency of the office, and that the prohibition reaches no further; that it does not prevent his purchasing certificates of the county, or of any vendee of the county, issued prior to his assumption of the duties of the

office. Prior to the amendatory act of 1881 the law prohibited the county treasurer from being interested in the purchase of "property sold for taxes at any tax sale, or to purchase *any tax certificate or tax deed* held by the county except for and on behalf of the county" (Laws of 1864, ch. 276; R. S. sec. 1143), and this court held, in *Coleman v. Hart*, 37 Wis. 180, that the statute only prohibited the treasurer from purchasing tax certificates from the county, not from a vendee of the county. The law was then amended (ch. 268, Laws of 1881) so as to prohibit the treasurer from purchasing "property sold for taxes at any tax sale, or tax deed held by the county or by any person or persons whomsoever, except for or on behalf of the county," *or being "interested in the purchase of any property sold as aforesaid, at any such tax sale, or in the purchase of any tax certificate or tax deed*," except as otherwise provided in the act. It will be noted that the words "tax certificate" were omitted where they occurred in the first part of the old statute, and words were added prohibiting the treasurer from being interested "in the purchase of any tax certificate or tax deed except as hereinbefore provided." The trial judge reasoned that the added words refer to the preceding words, prohibiting the treasurer from making a purchase at his own sale. We are unable to conclude that his reasoning or conclusion is sound. In *Coleman v. Hart*, 37 Wis. 180, it was, as stated, held that the statute formerly only prohibited purchases from the county. If the conclusion reached by the circuit judge should prevail, the words "tax certificate" having been omitted from the first part of the act, the doors would be thrown wide open for speculation at will in tax certificates and tax deeds by county treasurers, the same as by outsiders, as to any certificates issued at any other time than during their incumbency of the office and at their own sales; and the statute would be wholly inoperative to prevent the mischiefs it was obviously intended to prevent. In *Coleman*

*v. Hart* it was not questioned but that the treasurer was prevented under the old statute from purchasing tax certificates from his county, whether issued by him or not. It was inferentially held that he was so prohibited. The amendment of 1881 was undoubtedly passed to broaden the prohibition, not to narrow it. If the general prohibitory words added by the amendatory act were intended to prevent a treasurer from being interested in the purchase of any tax sale certificates issued by his county, whether from such county or otherwise, then the omission of the words "tax certificate," where they occurred in the old statute, is of no consequence.

In *Coleman v. Hart*, Mr. Justice COLE said: "It is said that the intention of the statute was to inhibit the purchase of this species of property by these officers, in order to prevent all fraud or corruption growing out of the speculation in tax certificates by them. If this was really the intention and design of the legislature, why was not the prohibition made general, prohibiting the purchase by these officers of a tax certificate or a tax deed from any one, instead of restricting it to a purchase from the county?" This was followed by the amendment adding the general prohibition against county treasurers being interested in the purchase of *any tax certificate or tax deed* except as otherwise provided in the act; and now it is said that the mischief not prevented by the old law is not only permissible by the act as amended, but that the restrictions upon the treasurer's purchasing certificates from his county, except such as are issued during his incumbency, are removed, because the words "tax certificate" are omitted where they previously occurred. As said in *Coleman v. Hart*, the statute is penal and should be strictly construed; but really the intent, in our view, is so manifest, and the words are so clear and precise, that the maxim laid down by Vattel should apply: "It is not allowable to interpret what has no need of interpretation." "When the meaning is evident, and leads to no ab-

surd conclusions, there can be no reason for refusing to admit the meaning which the words naturally present; to go elsewhere in search of conjecture in order to restrict or extend the act would be but an attempt to elude it. Such a method, if once admitted, would be exceedingly dangerous, for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless. . . . Puffendorff says: 'If the words of the law express clearly the sense and intention, we must hold to that.'" Smith, Stat. & Const. Law, § 478. So, interpreting the statute before us, as the words express clearly the sense and intent, we must hold to that. There is no room for the application of rules for judicial construction. It is only where the intent is ambiguously expressed that the rules of construction come in. *Mundt v. S. & F. du L. R. Co.* 31 Wis. 451.

The words "tax deed" where used in the first part of sec. 1143, mean land held by the county on tax deed; the words "tax certificate," used in the second part of the statute, mean certificates issued by the county of which the person prohibited is an officer, whether issued during his incumbency of the office or otherwise, and whether purchased of the county or of some vendee of the county. The whole section means just what the words clearly imply,— that the county treasurer, while he holds his office, cannot purchase, directly or indirectly, or be interested, directly or indirectly, in the purchase of, any tax sale certificate issued by his county. It does not, by its terms or by implication, prohibit his purchasing tax sale certificates of any other county,— that is, issued by any other county.

By force of the act creating Oneida county, and providing that the new county should be the owner of all tax sale certificates owned by the old county at the time of the division on land situated in the new county, and that such certificates should be assigned to the new county and treated thereafter

T. B. Scott Lumber Co. vs. Hafner-Lothman Mfg. Co.

in all respects as certificates issued by such new county, they became, to all intents and purposes, certificates of such county; and sec. 1143 had no more effect to prevent the treasurer of Lincoln county from purchasing such certificates of Oneida county than it would to prevent him from purchasing certificates issued by any other county; that is to say, under the act creating the county of Oneida the certificates in question became and were, at the time *Sturtevant* purchased them, governed by the same rules as if they had been actually issued by Oneida county instead of by Lincoln county. Therefore they did not come within the prohibition of the statute. Hence the fact that *Dutruit*, the treasurer of Lincoln county, was directly or indirectly interested in such purchase, does not affect the validity of the tax deeds under which *Sturtevant* and *Sophia L. Dutruit* claim title. This results in the same conclusion as reached by the court below, but not on the same ground.

*By the Court.*— The judgment of the circuit court is affirmed.