SAUNTRY, Appellant, vs. LAIRD, NORTON COMPANY and others, Respondents.

*May 6 — June 23, 1898.*

*Watercourses: Dams: Tolls on logs: Construction of statute.*

1. Ch. 111, Laws of 1891, authorizes S., "for the purpose of improving the navigation of the St. Croix river," "to build or acquire, maintain and operate three dams across said river" between certain points, "and also to build, maintain, and operate such booms and other improvements upon said river, between said points, as may be necessary or convenient to render the driving of logs upon said river from" the upper of said points "to the head of Lake St. Croix reasonably convenient and certain." It provides that, when S. "shall have erected or acquired and shall maintain said dams hereinbefore authorized," he may collect tolls "on all logs or timber sluiced or driven through or by the aid of any one of said dams, or by the aid of the waters collected therein." *Held,* that the purpose of the act was to improve the navigation of the whole river, to facilitate the driving of logs from the upper point mentioned down the river to the head of St. Croix Lake at Stillwater; and that the right to collect tolls is not limited to logs driven or sluiced through, or which pass over, or from a point above to a point below, one or more of said dams, nor, as to logs entering the St. Croix river below the lowest of said dams, is the right to tolls limited to such as are driven, by the aid of waters collected in one or more of said dams, from the point where the drive begins in the St. Croix down until they reach the flowage of another dam located further down said river.

2. The erection or acquiring of two dams only between the specified points, instead of three, was not such a compliance with the act as authorizes the collection of any tolls thereunder.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *S. J. Bradford,* attorney, and *Clapp & Macartney,* of counsel, and oral argument by *N. H. Clapp.*

For the respondents there was a brief by *John W. Bashford, Frank T. Wilson,* and *W. P. Warner,* and oral argument by *Mr. Bashford* and *Mr. Wilson.*

Sauntry vs. Laird, Norton Co. and others.

CASSODAY, C. J. This is an action to recover $8,209.47, alleged to be due to the plaintiff for tolls in aiding in the driving of 41,047,380 feet of white pine saw logs, owned by the defendants jointly, by waters collected in his two dams across the St. Croix river, at the place described, during the several years of 1891, 1892, 1893, 1894, and 1895; each year constituting a separate cause of action. The defendants answered the several causes of action alleged, and at the close of the trial the court found, in effect, that after the enactment of ch. 111, Laws of 1891, to wit, May 11, 1891, the plaintiff acquired the title to the lands described in sections 25 and 36, township 44 N., of range 13 W., with a substantial dam thereon across the St. Croix river, about twelve feet in height, which was at that time, and ever since has been, provided with suitable gates and sluices to enable logs to be driven over the same, and also to discharge the waters collected by said dam out of the same in such quantities and at such times as he desired, and known as the "St. Croix dam;" that the dam held back and accumulated water in sufficient quantities to furnish a driving stage of water in the St. Croix river below the mouth of the Nemakagon river for a period of from five to six days, when the water in said river below the mouth of the Nemakagon river would otherwise be too low to make it practicable to drive logs thereon; that May 11, 1891, the plaintiff also acquired the title to the lands described in section 7, township 44 N., of range 11 W., with another dam thereon across the St. Croix river, about five feet in height, provided with gates and sluices suitable and convenient for sluicing and driving logs over said dam, and for controlling and discharging the waters therefrom in such quantities and at such times as the plaintiff might desire, and known as the "Cutaway dam," the same being of sufficient size and capacity to hold back and accumulate a sufficient amount of water to furnish a driving stage of water in the St. Croix river below the mouth of the Nema-

kagon for a period of from twenty-four to thirty-six hours, when the water in said river would otherwise be too low to make it practicable to drive logs thereon; that ever since May 11, 1891, the plaintiff has maintained and operated said two dams, and no others, on the St. Croix river; that the two dams have been so controlled and managed as to best subserve the interests of all parties engaged in driving logs upon the St. Croix river from points above the St. Croix dam, but without any regard to the interests of any parties, other than the plaintiff, engaged in driving logs down the St. Croix river from or below the mouth of the Nemakagon or any of its tributaries, except in the year 1895; that the pine saw logs in question were all cut and banked upon the Totogatic river and its tributaries; that the Totogatic river is a tributary of the Nemakagon river, which empties into the St. Croix river about twenty miles below the St. Croix dam; that all of the logs were driven out into the St. Croix river, and were thereafter driven down the St. Croix river to the flowage of the Nevers dam, forty miles above the city of Stillwater; that during all the times mentioned the St. Croix river has been navigable for logs and timber from the mouth of the Nemakagon to the mouth of the St. Croix river, and during certain periods of each year in its natural state, without the aid of any of the dams mentioned, and that the same has been used as a public highway for the driving of logs to market for more than thirty years prior to the commencement of this action; that it is impossible to determine from the evidence what portion of the defendants' logs were driven, flowed, or transported below the mouth of the Nemakagon by the aid of waters collected in or coming from the said dams or from either of them, and therefore the court found that none of them were so driven, flowed, or transported.

As conclusions of law the court found, in effect, that ch. 111, Laws of 1891, is a valid enactment; that the plaintiff is

entitled to collect tolls on logs sluiced or driven through or over the St. Croix dam, though he has constructed, maintained, and operated only two of the three dams across the St. Croix therein provided for; that under the act the plaintiff is entitled to collect toll only on logs driven or sluiced through, or which pass over, or from a point above to a point below, one or more of said dams, and he is not entitled to collect on logs entering the St. Croix through the Nemakagon, or through streams entering the St. Croix below the mouth of the Nemakagon; that in no event is the plaintiff entitled to collect toll on logs entering the St. Croix from the Nemakagon, unless driven by the aid of waters collected in one or more of such dams from the point where the drive is begun in the St. Croix until they reach the flowage of the Nevers dam, and he is entitled to no toll for aiding in the driving of logs for only a portion of such distance,— and ordered judgment to be entered thereon accordingly. From the judgment so entered the plaintiff appeals.

Ch. 111, Laws of 1891, contains, among other things, in effect, the following provisions: (1) For the purpose of improving the navigation of the St. Croix river, *William Sauntry*, his heirs or assigns, are hereby authorized and empowered to build or acquire, maintain and operate, *three dams* across said river at such different points as he or they may select, between a point where the west line of section 6, in township 44 north, of range 11 west, crosses said river, and the point where the south line of township 44 north, of range 13 west, crosses said river, and also to build, maintain and operate such booms and other improvements upon said river, between said points, as may be necessary or convenient to render the driving of logs upon said river from said point first hereinbefore mentioned to the head of Lake St. Croix reasonably convenient and certain; provided, however, that no one of said dams shall be constructed so as to raise the water, at the point where the same is constructed,

more than twelve feet above the natural height thereof. (3) All dams authorized by this act shall be constructed and maintained with suitable gates and sluices for the passage of logs over the same and the management and control of the water collected therein in aid of the navigation of the said St. Croix river. And all such dams, their gates and sluices and all other improvements erected or maintained upon said river by the said *William Sauntry*, his heirs or assigns, under the provisions of this act, shall at all times be under the exclusive control of said *William Sauntry*, his heirs or assigns, and shall be controlled and managed as in the judgment of said *William Sauntry*, his heirs or assigns, will best subserve the interests of all parties engaged in driving logs down said river. (4) As compensation for the improvement of the St. Croix river, *when* said *William Sauntry*, his heirs or assigns, *shall have erected or acquired, and shall maintain said dams* hereinbefore authorized across said river, said *William Sauntry*, his heirs or assigns, shall be entitled, and they are hereby authorized and empowered, to demand, receive, levy, sue for and collect as a toll the sum of ten cents per thousand feet board measure on all logs or timber sluiced or driven through, or by the aid of any one of said dams, or by the aid of the waters collected therein; and if any such logs or timber shall be so driven or sluiced through or by the aid of the waters collected in more than one of said dams, then the said *William Sauntry*, his heirs or assigns, shall be entitled and they are hereby authorized and empowered to demand, receive, levy, sue for and collect as a toll the sum of ten cents per thousand feet, board measure, upon all such logs or timber for each of the said dams through which or by the aid of the waters collected in any one of which any such logs or timber shall have been sluiced or driven.

The two points between which the plaintiff was thus authorized to build or acquire the three dams mentioned appear

to be about sixteen miles apart by the line of the Upper St. Croix river. The Cutaway dam, mentioned, is situated near the point furthermost up the river, and appears to be within a couple of miles of the mouth of Lake St. Croix, which is the head of the Upper St. Croix river; the St. Croix dam, mentioned, appears to be about twelve miles down the river from the Cutaway dam, and some three or four miles north-easterly from the point designated in the act as being furthermost down the river; the distance from the Cutaway dam to the lower end of drives at Nevers dam, mentioned, appears to be about 100 miles by the line of the St. Croix river; and Nevers dam is about forty miles above St. Croix Lake at Stillwater. The manifest purpose of the act was to improve the navigation of the whole river, to facilitate the driving of logs upon the river as far down as the head of the St. Croix Lake,— at least, as far down as the Nevers dam. It was certainly not the purpose of the act to limit the collection of toll to such logs only as should be driven or sluiced through or passed over, or from a point above to a point immediately below, one or more such dams, as held by the trial court. To hold that the purpose of the act was merely to aid in driving logs upon the sixteen or eighteen miles of the upper end of the river would be to do violence to the express language of the act. There can be no pretense that the purpose of such dams was to float logs up the river into Lake St. Croix, at the head of the river. On the contrary, the manifest purpose was to facilitate the driving of logs from the upper point mentioned down the river to the head of St. Croix Lake at Stillwater. Nor can we agree to the suggestion in the conclusions of the trial court to the effect that, assuming that the plaintiff is entitled to collect toll on logs entering the St. Croix from the Nemakagon, then such right is limited to such logs as were driven, by the aid of waters collected in one or more of such dams, from the point where the drive began in the St. Croix down until they reached the flowage of the Nevers dam.

Although we disagree with the construction given to the act by the trial court, as thus indicated, yet, after careful consideration, we are constrained to affirm this judgment upon another ground. As indicated in the fourth section of the act, as given above, the plaintiff is only entitled, authorized, or empowered to collect such toll, " as compensation for the improvement of said St. Croix river, *when* [he], his heirs or assigns, shall have erected or acquired, and shall maintain said *dams* hereinbefore authorized across *said river*." The words " said dams . . . across said river " manifestly refer to the " three dams " which the plaintiff was thereby " authorized and empowered to build or acquire, maintain and operate " across the St. Croix river by the first section of the act. True, the second section declares that, " for the purpose of improving the navigation of the Moose river," the plaintiff was " authorized and empowered to build or acquire, maintain and operate, three dams across said river " at the points therein designated; but that in no way obviates the condition precedent to the collection of any toll by the plaintiff for driving logs upon the St. Croix that he should first build or acquire, maintain, and operate the three dams across the St. Croix at the places and in the manner prescribed. If the plaintiff can dispense with one of the three dams thus prescribed, then he may dispense with two of them. The building or acquiring, maintaining, and operating such three dams across the St. Croix is, to our minds, a condition precedent to the collection of tolls,— so clear and unambiguous as not to admit of any other construction.

Counsel contend that, with the two dams where they are located, an additional dam would not improve the navigation of the river, and hence that it would be absurd to require such additional dam as a condition precedent. *Sellers v. Union Lumbering Co.* 39 Wis. 528. Toll can only be authorized as a reasonable compensation for improvements made or services rendered as prescribed by law. *Underwood Lumber Co. v. Pelican Boom Co.* 76 Wis. 76–85; *Falls Mfg.*

*Co. v. Oconto River Imp. Co.* 87 Wis. 151. It appears that the Cutaway dam had existed in its present form for nine years prior to the commencement of this action, and that the St. Croix dam had so existed for ten years before the commencement of this action. Nevertheless the act contemplated three dams to be built or acquired, which would improve the navigation of the river, before any toll should be collected. We have no authority to infer from extrinsic circumstances that a case for which the words of the statute expressly provide shall be exempted from its operation. On the contrary, it is our duty to give effect to the plain and unambiguous language of the statute. *Hanson v. Eichstaedt,* 69 Wis. 546, and cases there cited. We must hold that the construction of the two dams across the St. Croix is not such a compliance with the act as authorized the plaintiff to collect toll for aiding in driving any of the logs in question.

This view of the subject makes it unnecessary to determine the question whether the owners of the logs, or the contractors, were bound to pay the toll. See *Johnson v. Cranage,* 45 Mich. 14. Nor is it necessary to decide the very important question discussed, as to whether the act in question was a private or local bill, embracing more than one subject, and that expressed in the title, within the meaning of sec. 18, art. IV, of our constitution.

*By the Court.*— The judgment of the circuit court is affirmed.