MELLEN LUMBER COMPANY, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*May 3—May 31, 1913.*

*Workmen's Compensation Act: Total disability in particular employment: Measure of compensation: Statutes: Construction: Constitutional law: "Due process of law."*

1. Under secs. 2394—9, 2394—10, Stats., where an employee is totally disabled from performing the work in which he was employed when the injury occurred, he is entitled to recover the maximum allowance for total disability, no matter what his earning capacity may be in other callings.

2. So construed, the Workmen's Compensation Act does not deprive employers of their property without "due process of law," it being optional with them whether they will become subject to the provisions of the act or not.

3. In construing statutes courts look to consequences, but only where there is room for construction by reason of ambiguous language being used and where a literal construction would lead to some absurd result.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Brown, Pradt & Genrich,* and oral argument by *L. A. Pradt.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Byron H. Stebbins,* first assistant attorney general; for the respondent *Winters* a brief by *W. Stanley Smith;* and the cause was argued orally by *Mr. Stebbins* and *Mr. Smith.*

BARNES, J.  This case arises under the Workmen's 'Compensation Act.  One *Winters* was employed as a shingle sawyer by the plaintiff.  While at work he lost the thumb and index finger of his left hand.  He was earning to exceed $750 per year when injured.  He applied to the *Industrial Commission* to fix the amount of compensation which he was entitled to receive.  The matter was referred to Hon. A. W. Sanborn to take testimony and make findings and report the same to the *Commission.*  Mr. Sanborn found that the earning capacity of the applicant had been reduced to $9 per week by reason of the injury, and that he was entitled to recover sixty-five per cent. of the difference between the maximum amount allowable for total disability under the compensation act, to wit, $14.42 a week, and what he was capable of earning thereafter, to wit, $9 a week, or $3.52 a week for a period of fifteen years, or an aggregate of $2,745.60. The *Commission* made an award in accordance with these findings.

The plaintiff commenced an action to review these findings, alleging among other things that the award had been made without a final hearing before the *Commission.*  This contention was sustained and the record was remanded for further hearing before the *Commission.*  Thereafter the *Commission* made a second award.  It was found as a fact that *Winters* was totally incapacitated by the accident from again following the occupation of shingle sawyer.  It is not expressly found that the injured employee could engage in

other lines of employment, but in the decision filed with the award it is said: "We feel that there are many occupations open to the applicant where he can earn a good wage, and we have little doubt that he will find his place as a useful, self-supporting member of society." The *Commission* on the final hearing awarded the claimant sixty-five per cent. of the maximum allowance, $14.42 a week, or $9.37, until the weekly payments aggregated $3,000, less the sum of $46.85 which had already been paid.

Among other things the *Commission* found:

"That because of the injuries received in said accident, the said applicant, *William H. Winters,* is totally and permanently disabled so that he cannot return to the employment in which he was working at the time of the accident, and there is a total permanent impairment of his earning capacity in such employment."

This second award was confirmed by the court, and plaintiff appeals from the judgment of confirmation.

It is perfectly obvious that the *Commission* did not find and did not intend to find that *Winters* was incapacitated from engaging in all gainful occupations. It did find that he was permanently disabled from engaging in the work of shingle sawyer.

The *Commission* construed the compensation act to mean that where an employee is totally disabled from performing the particular work which he was performing when the injury occurred, he is entitled to recover the maximum allowance for total disability, no matter what his earning capacity may be in other callings. The circuit court came substantially to the same conclusion.

The appeal involves but a single question and that is a question of law, of statutory construction. The appellant urges that the construction adopted is unreasonable and was not within the contemplation of the legislature; that it is

absurd to say that it was intended to give the applicant here, who concededly is capable of earning a substantial wage, the same compensation that he would receive had he lost both his arms or both his legs, and that if such is the meaning of the law it is unconstitutional because it deprives the employer of his property without due process of law. Some criticism is made by the appellant on the alleged hybrid findings of the *Commission,* and it is insisted that there should be either a clear-cut finding of total disability or one of partial disability. If the *Commission* placed the correct interpretation upon the law, its findings were properly made. It found total disability to do a certain kind of work, but not to do all kinds of work, and that the statute made it obligatory upon the *Commission* to award compensation as for total disability.

The material provisions of the compensation act (secs. 2394—1 to 2394—71, Stats. 1911) are the following:

Sec. 2394—9. ". . . (2) If the accident causes disability, an indemnity which shall be payable as wages on the eighth day after the injured employee leaves work as the result of the injury, and weekly thereafter, which weekly indemnity shall be as follows:

"(a) If the accident causes total disability, sixty-five per cent. of the average weekly earnings during the period of such total disability; provided that, if the disability is such as not only to render the injured employee entirely incapable of work, but also so helpless as to require the assistance of a nurse, the weekly indemnity during the period of such assistance after the first ninety days shall be increased to one hundred per cent. of the average weekly earnings.

"(b) If the accident causes partial disability, sixty-five per cent. of the weekly loss in wages during the period of such partial disability.

"(c) If the disability caused by the accident is at times total and at times partial, the weekly indemnity during the periods of each such total or partial disability shall be in accordance with said subdivisions (a) and (b), respectively."

Sec. 2394—10. " . . . 2. The weekly loss in wages referred to in sec. 2394—9 shall consist of such percentage of the average weekly earnings of the injured employee, computed according to the provisions of this section, as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the accident, the same to be fixed as of the time of the accident, but to be determined in view of the nature and extent of the injury."

If sub. (b) of sec. 2394—9 above quoted stood alone, there could be little doubt about what it meant. But by sub. 2 of sec. 2394—10 the legislature explains how the loss of wages for the partial disability provided for in sub. (b) is to be ascertained and computed. It is "such a percentage of the average weekly earnings . . . as shall fairly represent the proportionate extent of the impairment of his earning capacity in the employment in which he was working at the time of the accident. . . ." This is just what the *Commission* allowed, it having found that he was totally incapacitated from performing his former work.

This is a new statute containing a large number of provisions which deal with a new and a complex subject. It may well be that if the legislature had in mind the concrete case with which we are dealing it would have provided for such a contingency. It is not very probable that it was intended to give an employee who lost a thumb and finger of the left hand the same compensation that he would be entitled to receive had he been so maimed that he was totally incapacitated from doing any kind of work. If this is so, then it is apparent that the legislature overlooked the contingency with which we are dealing, or it in fact has provided that the future earning capacity of the employee must be taken into account. If the former is the correct diagnosis, then the remedy rests with the legislature. It is its function to amend the act where amendment is found necessary. The fact that injustice may result in the instant case is nothing that con-

cerns the courts unless some constitutional right of the appellant is being invaded. The plain and obvious meaning of the language used in a statute is generally the safest guide to follow in construing it. Seeking hidden meanings at variance with the language used is a perilous undertaking which is quite as apt to lead to an amendment of a law by judicial construction as it is to arrive at the actual thought in the legislative mind. Where a statute plainly says, as this one does, that the loss in case of partial disability shall consist of such percentage of the weekly earnings of the employee as shall fairly represent the proportionate extent of the impairment of his earning capacity *in the employment in which he was working at the time of the accident,* we fail to see how the court would be justified in adding thereto the following limitation: "Less such sums as the employee might be able to earn in some other calling." This in effect is what the court would have to do if it adopted the construction for which the appellant contends. There is nothing doubtful, obscure, or ambiguous about the language used. It is argued that a literal interpretation of a statute should not be followed where such interpretation would lead to an absurd consequence. The statute in question may be inequitable, but this does not make it absurd. It was at one time urged that the courts might mitigate the rigor of harsh statutes by adopting a rule of equitable construction by which exceptions might be read into such statutes. It never obtained in this state, nor to any considerable extent in this country. It was disposed of by Chief Justice Dixon in *Encking v. Simmons,* 28 Wis. 272, 276, in the following language:

"The proposition, however it may once have been held or considered, that the courts, upon what is termed an equitable construction or otherwise, may, against the plain language of a statute and in opposition to the intent clearly expressed by the words, mitigate the 'violence of the letter' by introducing exceptions where the statute itself contains none, so as to relieve in cases of hardship or particular inconven-

ience, has been too long and too frequently rejected to be now the subject of serious argument or doubt. Such doctrine, if it ever existed, was long since exploded, and the rule now universally recognized and acted upon is, that whatever else may be done with the words of a statute, they may never, in the language of Lord BACON, 'be taken to a repugnant intent.'"

See, further, *Harrington v. Smith,* 28 Wis. 43.

The law as it reads has the merit of being explicit as to the amount of compensation which the employee shall receive, although it bears rather heavily on the employer in a case like the one under consideration. Where the language used in a statute is plain, the court cannot read words into it that are not found therein either expressly or by fair implication, even to save its constitutionality, because this would be legislation and not construction. *Rogers-Ruger Co. v. Murray,* 115 Wis. 267, 91 N. W. 657. Courts in construing statutes look to consequences, but only where there is room for construction by reason of ambiguous language being used and where a literal construction would lead to some absurd result. *Berger v. Berger,* 104 Wis. 282, 80 N. W. 585; *Sauntry v. Laird, Norton Co.* 100 Wis. 146, 75 N. W. 985; *Gilbert v. Dutruit,* 91 Wis. 661, 65 N. W. 511; *Battis v. Hamlin,* 22 Wis. 669.

The argument that the provision under discussion is violative of the "due process of law" clause of the federal constitution cannot prevail. It was optional with the appellant to come in under the compensation act or to stay out. It elected to take the former course. It accepted the provisions of the act as they were, the burdens as well as the benefits, and so long as it remains under the law it must take the statute as it finds it. *Daniels v. Tearney,* 102 U. S. 415, and cases cited at page 421; *Grand Rapids & I. R. Co. v. Osborn,* 193 U. S. 17, 29, 24 Sup. Ct. 310.

*By the Court.*—Judgment affirmed.