INTERNATIONAL HARVESTER COMPANY, Appellant, vs. IN-
DUSTRIAL COMMISSION OF WISCONSIN and another, Re-
spondents.

*March 21—May 1, 1914.*

*Workmen's Compensation Act: Permanent partial disability: Impair-
ment of sight of one eye: Lessened capacity to get work: "Em-
ployment" in which person was working: Industrial commis-
sion: Findings must be based on evidence: Record on review:
Judicial notice: What constitutes evidence.*

1. Under sec. 2394—10, Stats. 1911, no compensation could be awarded
   to an injured employee for permanent disability unless there
   was "impairment of his earning capacity in the employment in
   which he was working at the time of the accident."
2. An injury to a drill-press operator resulting in material impair-
   ment of the sight of one eye was a sufficient ground for award-
   ing compensation as for a permanent partial disability, al-
   though the injured employee was taken back by the employer as
   soon as he was able to work, and was able to earn as much as
   before in the same employment, if in fact manufacturers operat-
   ing drill presses would be less likely to hire him because of his
   injury or disfigurement.
3. Sec. 2394—16, Stats. 1911, provided for a full and fair hearing
   upon the merits, and this necessarily included the right of both
   parties to know what the testimony taken without notice tended
   to prove; and the law clearly contemplated that the parties
   should have the right to meet any new matter.
4. The findings of fact made by the industrial commission must have
   some support in the evidence, and such evidence must be made
   a part of the record which is returned to the circuit court for
   review.
5. To find essential facts which have no support in the evidence is
   outside of or in excess of the powers of the commission, and
   under sec. 2394—19 is ground for setting aside its award.
6. It is not a matter of common knowledge, of which judicial notice
   can be taken, that a drill-press operator who had partially lost
   the sight of one eye would probably be discriminated against in
   the matter of employment.
7. A finding by the industrial commission in this case that, although
   the partial loss of the sight of one eye had not impaired the
   ability of a drill-press operator to do a full day's work in that
   occupation, yet that there was a permanent partial disability
   because, on account of such partial loss of sight, employers
   would be less likely to hire him, is *held* not to be supported by
   any evidence.

8. A bulletin of the commission containing statements by forty-nine persons who had lost the sight of one eye, three fourths of whom stated that their injury had no effect on their earning capacity and none of whom stated that such an injury would affect the earning capacity of a drill-press operator, and showing that thirteen of such persons were asked whether they had been discriminated against in the matter of securing work and but one (whose ambition was to become a railroad man) gave an affirmative answer—did not tend to support the finding above mentioned.

9. Statutes and legislative and administrative rules of other states, rulings of the United States pension board, and an award by the industrial accident board of another state—all of which the industrial commission stated that it had considered in reaching its conclusion, but which were not made a part of the record— did not constitute evidence on which the finding of fact could rest.

10. Operating a drill press is an "employment" within the meaning of sec. 2394—10, Stats. 1911.

TIMLIN, SIEBECKER, and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

*Ernest Koenig,* an employee of the plaintiff, was injured on March 5, 1912, by reason of a particle of steel entering one of his eyes. The piece of steel was removed by a magnet, but the employee was incapacitated from working for a considerable length of time. He was paid for his loss of time while unable to work, and doctors' bills, as provided in the Workmen's Compensation Act. The sight of the eye was not destroyed, but it was materially impaired, and the employee instituted this proceeding against the employer to recover compensation for alleged permanent partial disability. The *Industrial Commission* found that the applicant was totally disabled from performing work for ten weeks and four days, and that he was partially disabled thereafter, to the extent of a permanent loss of weekly wage of fifteen per cent.; that the average annual earnings of the applicant at the time of the injury amounted to $750; that the applicant's loss of wage because of his permanent partial disability

amounts to $2.16 per week. The employer was ordered to pay the applicant $58.42 for compensation to March 10, 1913, and to pay him thereafter the sum of $1.41 per week until the expiration of the period of fifteen years from March 5, 1912. Other facts will be sufficiently stated in the opinion. The plaintiff brought an action in the circuit court for Dane county to set aside the award. In that court the award of the *Industrial Commission* was sustained, and plaintiff appeals to this court.

For the appellant there was a brief by *Vroman Mason* and *David A. Orebaugh,* attorneys, and *Edgar A. Bancroft,* of counsel, and oral argument by *Mr. Mason.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Byron H. Stebbins,* assistant attorney general, and oral argument by *Mr. Stebbins.*

For the respondent *Koenig* there was a brief by *Rubin & Zabel,* attorneys, and *Horace B. Walmsley,* of counsel, and oral argument by *W. B. Rubin.*

BARNES, J. The appellant makes the following contentions: (1) That unless the earning capacity of the claimant *in the employment in which he was engaged* at the time he was injured has been impaired, there can be no recovery for permanent disability; (2) that the undisputed evidence in the case affirmatively shows that there was no such impairment; and (3) that there is no support in the testimony for the finding of the *Industrial Commission* that there was.

1. The correctness of appellant's first contention cannot be gainsaid. The statute, sec. 2394—10, Stats. 1911, provides that the loss in wages for which compensation may be made shall consist of such percentage of the average weekly earnings of the injured employee as shall fairly represent "the proportionate extent of the impairment of his earning capacity *in the employment in which he was working at the time of the accident."* This court has held that this statute

was plain and meant just what it said, and recovery was allowed for total disability because the employee was unfitted by his injury to follow the occupation in which he was engaged when injured, although it was shown without dispute that he was capable of earning substantial wages in other occupations. *Mellen L. Co. v. Industrial Comm.* 154 Wis. 114, 142 N. W. 187. This statute does not mean one thing when it is to the advantage of one employee to so maintain, and at the same time mean something directly contrary when it is to the advantage of some other employee to make a different claim.

2. The claimant had been operating a drill-press in the plaintiff's factory for about a year before he was injured, and before that time had worked for another company at the same occupation. He was laid up for over ten weeks and incurred considerable expense for doctors' services. These items were taken care of by the plaintiff as provided in the Compensation Act. The claimant did piece work, the amount of work turned out determining the amount of his compensation. Before the accident his average daily earnings during the time he had worked for the plaintiff amounted to $2.50. Ten weeks and four days after the accident he went back to work. When the claim for compensation was heard before the *Industrial Commission* he had worked forty-four and one-half days at his former employment, doing piece work, and had earned a little over $3 per day. The *Industrial Commission* in its decision said that it was "satisfied from its investigation of injuries of this character and from the testimony that a man injured as applicant was injured can perform the labor that applicant was doing prior to his injury without difficulty." It further said: "The *Commission* is also convinced that in most employments a one-eyed man is physically able to earn substantially the same wage as a man with two eyes."

The *Commission* fully sustains the contention of the plaintiff that the claimant is capable of earning as much as before

he was injured in the employment in which he was then en-
gaged, but awarded compensation on the theory that employers
would be less likely to hire him because of the partial loss of
sight in one eye. There was no claim that the injury had
affected or would affect the sight of the other eye. The
plaintiff urges that the injured employee was taken back as
soon as he was able to work, and continued in his employ-
ment, and that it therefore conclusively appears that he was
not discriminated against because of his injury. This argu-
ment is inconclusive. The plaintiff may at any time dis-
pense with the claimant's services and the claimant may be-
come dissatisfied with his employer. If it is a fact that
manufacturers who operate drill-presses discriminate against
employees who have lost part of the use of one eye, then the
claimant may find himself out of employment a part of the
time when he could otherwise secure work, particularly at
times when labor is plentiful and jobs are scarce. The fact
that the applicant is entirely fit to perform a full day's work,
while it may be some consolation to him, does not replenish
the dinner pail if the work cannot be had. It may be diffi-
cult to ascertain the amount of the loss, but if the claimant
must submit to enforced idleness because of his injury, then
he certainly suffers loss, the extent of which must be measured
largely by the probable extent of the loss of time that is likely
to be suffered on account of the injury. The highest court of
England has decided that an injury or disfigurement which
destroys or impairs the injured workman's capacity to get
work is an element to be taken into consideration in the as-
sessment of compensation. *Ball v. Hunt & Sons,* 81 L. J.
K. B. 782, 787. It is not difficult to imagine employments
where mere disfigurement would preclude a person from
being employed altogether, although physically capable of
doing the work in a satisfactory manner.

3. The contention that there is no evidence whatever to
support the award made raises an important question which

has been given a good deal of consideration and which necessitates a discussion of some of the provisions of the Workmen's Compensation Act.

This statute, while providing for a review by the courts of the award of the *Industrial Commission,* unlike the Railroad Commission Law does not permit a trial *de novo* in the circuit court. That court may set the award aside on three grounds only: (1) That the *Commission* acted in excess of its powers; (2) that the award was procured by fraud; and (3) that the findings of fact do not support the award. Sec. 2394—19, Stats. 1911. Where an award is attacked as having been procured by fraud, it is probable that the statute contemplates that evidence may be taken on this issue in the circuit court. Whether this be correct or not, it is certain that this is the only ground on which the circuit court can consider any facts not found in the record as returned. Both parties must offer any testimony they wish to adduce before the *Commission* except on the issue of fraud. If they fail to do so, they are precluded from offering it at all.

Sec. 2394—16, Stats. 1911, carefully prescribes the powers and duties of the *Commission* in regard to taking testimony, in the following words:

"Either party shall have the right to be present at any hearing, in person or by attorney, or any other agent, and to present such testimony as may be pertinent to the controversy before the board; but the board may, with or without notice to either party, cause testimony to be taken, or an inspection of the premises where the injury occurred to be had, or the time books and pay roll of the employer to be examined by any member of the board or any examiner appointed by it, and may from time to time direct any employee claiming compensation to be examined by a regular physician; the testimony so taken and the results of any such inspection or examination, to be reported to the board for its consideration upon final hearing."

Under this statute either party has the right to present any testimony pertinent to the controversy. The *Commission*

may take testimony on its own motion without notice to either party. It may also inspect the time books and pay rolls of the employer, as well as the premises where the accident occurred. It may direct the claimant to submit to a medical examination. The testimony and the results of the inspection must be reported to the *Commission,* to the end that the *Commission* may consider them and that either party may have the right to rebut the same at the final hearing.

The hearing before the *Commission* is the only one either party ordinarily ever gets on the merits. Once the award is made, except in cases of fraud, relief can be had only because of jurisdictional errors or errors of law. The statute carefully provided for one full and fair hearing on the merits. This necessarily included the right on the part of both parties to know what the testimony taken without notice tended to prove. Otherwise it could not be met, no matter how successfully the party against whom it operated might meet it if he knew what it was. To dispel any doubt about the matter, the statute required all the evidence not taken at the original hearing to be laid before the *Commission* before the final hearing ended. This necessarily implies that the testimony taken *ex parte* is laid before the parties. Once filed with the *Commission* it becomes a public record which either party may examine and the law clearly contemplates that the parties shall have the right to meet any new matter. Had the statute been less explicit the proceeding would be the same, under the rule in *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595, and in *State ex rel. Arnold v. Common Council of Milwaukee, post,* p. 505, 147 N. W. 50. If it was a fatal jurisdictional error, as is held in the *Arnold Case,* to refuse to hear argument on the part of the relator because it denied a common-law hearing, it would be a much more serious and prejudicial error to decide an important controversy on evidence which the defeated party did not and could not know of.

It will be further noticed that the section quoted specifies

just what the *Commission* may consider in the way of evidence. It may take into account (1) testimony offered, whether taken *ex parte* or not, where the parties are afforded an opportunity for rebuttal; (2) such inspection as it may make of the time books and pay roll of the employer; (3) the result of any medical examination that may be ordered.

As further bearing on the duty of the *Commission* to preserve and place before the parties all testimony on which it acted, sec. 2394—19 might be referred to. This section requires the *Commission*, when suit is brought to set aside an award made by it, to return to the circuit court all documents and papers on file in the matter *and all testimony which may have been taken therein.* Obviously, this is essential if the court is required to examine the record to ascertain whether there is any evidence to sustain the findings made. The court cannot pass upon such a question unless it knows what evidence the *Commission* had before it.

This same section (2394—19) provides that the findings of fact made by the *Commission within its powers* shall in the absence of fraud be conclusive. This leads to the query: Is it within the power of the *Commission* as set forth in the law to make a finding of fact not supported by any evidence whatever? This feature of the law was attacked in the original suit brought to test its constitutionality and was considered by the court, and it was there decided that if the *Commission* acted outside of its powers its decision was open for review to the extent that decisions of various other bodies are reviewable on *certiorari.* Continuing, the court said:

"In such cases it is considered that clear violations of law in reaching the result reached by the board, such as acting without evidence when evidence is required, or making a decision contrary to all the evidence, constitute jurisdictional error and will justify reversal of the board's action, as well as the failure to take the proper steps to acquire jurisdiction at the beginning of the proceeding. *State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188." *Borgnis v. Falk Co.* 147 Wis. 327, 358, 359, 360, 133 N. W. 209.

The statute contemplates and provides for a full and fair
hearing and that the decision of the *Commission* shall be
based on evidence and not arbitrarily made.    It would seem
to be clearly outside of its powers to find essential facts that
had no support in the evidence.    This is one of the grounds
specified in sec. 2394—19 on which the courts may review
the award made by the *Commission.*

In a number of cases following the decision in *Borgnis v.
Falk Co., supra,* the interpretation there given to the law has
been followed.    *Northwestern I. Co. v. Industrial Comm.*
154 Wis. 97, 103, 142 N. W. 271; *Nekoosa-Edwards P. Co.
v. Industrial Comm.* 154 Wis. 105, 108, 141 N. W. 1013;
*Milwaukee v. Miller,* 154 Wis. 652, 144 N. W. 188.

The rule in *certiorari* cases is that, if in any reasonable
view of the evidence it will support the conclusion arrived at,
such conclusion will not be disturbed for want of support in
the evidence.    If, however, the finding has no support in the
testimony, there was no jurisdiction to make it.    *State ex
rel. Miller v. Thompson,* 151 Wis. 184, 187, 188, 138 N. W.
628; *State ex rel. M. A. Hanna D. Co. v. Willcuts,* 143 Wis.
449, 453, 128 N. W. 97; *State ex rel. Augusta v. Losby,* 115
Wis. 57, 90 N. W. 188; *State ex rel. Edward Hines L. Co.
v. Fisher,* 129 Wis. 57, 108 N. W. 206.    From what has
been said it is obvious that there must be some support in the
evidence for findings of fact made by the *Industrial Commis-
sion* and that such evidence must be made a part of the record
that is returned to the circuit court for review.

This brings us to a consideration of the evidence taken on
the hearing which is before us and which consists of sworn tes-
timony taken before the *Commission* and a statistical report
compiled and published by the *Commission.*    Sec. 2394—52,
sub. 10, authorizes the *Commission* to collect, collate, and
publish statistical and other information relating to the work
under its jurisdiction and to make such public reports thereof
as it deems necessary.    This report was laid before the par-
ties, and might be considered as evidence by the *Commission.*

*Chicago & N. W. R. Co. v. Railroad Comm.* 156 Wis. 47, 145 N. W. 216.

There was no testimony given by any witness to the effect that drill-press operators who had the sight of one eye impaired were discriminated against by employers.    Whatever evidence is contained in the record to support the finding of the *Commission* is found in pages 152 to 162 inclusive of a bulletin issued by the *Commission* under date of March 30, 1913 (vol. 2, No. 6).

This bulletin contains statements made by forty-nine different persons who at some time in their lives had lost the sight of one eye.    The inquiries were directed to two subjects: (1) The ability to do work after the accident, and (2) the ability to secure employment.    Only thirteen of the persons interrogated were interviewed on this specific point. Less than one fourth of the persons interviewed stated that they thought they might have done better had it not been for their injury.    The remaining three fourths said their injury had no effect on their earning capacity.    No one stated that such an injury would affect the earning power of a drill-press operator.    On this report, in part at least, the, *Commission* reached the conclusion, as before stated, that the claimant's ability to do a full day's work in the occupation in which he had been engaged was not impaired.    Of the persons specifically asked as to whether they had been discriminated against in the matter of securing work because of the loss of an eye, but one gave an affirmative answer.    He said he had been "refused employment, as his ambition was to become a railroad man, but the loss of the eye proved to be a handicap."    The others all stated that the injury did not prove to be a handicap in the matter of securing work.    This evidence, instead of tending to support the finding of the *Commission,* if it is of any value, strongly tends to support an opposite conclusion.    It cannot be that because one person lost an eye when he was a boy and was thereby

disabled from entering the railroad service, it follows that the claimant would be refused employment as a drill-press operator because of the partial loss of the sight of one eye.

The *Commission* did not base its finding on evidence laid before the parties or on anything that can be considered evidence under the statutes referred to. In its memorandum decision filed with the award it states what it considered in the following language:

"It has caused an investigation to be made of a great many cases where one-eyed men are actually at work in various employments. The result of this investigation is in print and is made the subject of public report. The *Commission* has given consideration to various compensation acts in this and other countries, and has considered the legislative and administrative rules with reference to compensation in such cases. It has considered the conclusions and results of the United States Pension Board in making pension allowances in cases of similar injuries. The *Commission* also has before it an award made by the California Industrial Accident Board under a provision in the California Compensation Act, identical with the provisions in this act.

"From all of the information that the *Commission* has at hand, it concludes that under our act the loss of earning capacity because of the loss of the sight of one eye is equal to fifteen per cent. of the employee's earning capacity at the time of the injury.

"Therefore an award will go in favor of the applicant based on a loss of fifteen per cent. of his earning capacity as determined by the evidence."

This award was made about eight months after the final hearing took place. What compensation acts were considered and what provisions they contained, we do not know, and the parties did not know. The same is true of the legislative and administrative rules referred to, as well as the conclusions of the United States Pension Board which are mentioned. We have no means of knowing whether the statutes referred to are similar to our own or otherwise. It is difficult to see

wherein any of these things could constitute evidence on which the finding of fact made could rest.   The decision of the California commission was not returned with the record and presumably was not put in evidence.   We have examined it and cannot see how it even tends to prove any fact upon which the award here made might be sustained, even if we could consider it.   The narrow question here is: Was there any evidence tending to show that the claimant could get steadier work as a drill-press operator with two good eyes than he could with the sight of one impaired?   How statutes of other states or rules for their enforcement or rulings of the pension board or of the California commission could affect this question is not apparent.   But if they do, the parties were entitled to know what statutes and rules were relied on, to the end that they might present evidence to the contrary, or at least argue to the *Commission* that they did not tend to, establish liability.   *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595; *State ex rel. Arnold v. Common Council of Milwaukee,* post, p. 505, 147 N. W. 50.

The circuit court was evidently unable to find any evidence in the record to support the finding of the *Commission.*   The learned judge in his decision said:

"In determining whether such findings are supported by the evidence, the court must consider all matters of which judicial notice will be taken.   The evidence establishes the fact that the loss of one eye affects the ability of the applicant to judge distances.   It is a matter of such common knowledge that judicial notice will be taken of it, that preference will generally be given to men with two eyes, who can correctly judge distances, when they are to be employed upon such machines as that upon which the applicant is working."

We entertain a high regard for the opinion of the circuit judge in this as well as in other matters.   But we are obliged to disagree with him.   The persons interviewed by the *Industrial Commission* seem to do likewise, and they ought to know what the fact is.   If it be true that persons injured as

was the applicant are discriminated against in the matter of employment in any considerable number of callings, including that of drill-press operator, the majority of this court does not know it and never heard of it, and we venture to say that not one person in five hundred has any advantage over us in this respect. We are referred to no source from which this knowledge can be obtained. It is perhaps quite generally known that soldiers, and seamen on war vessels, must pass a physical examination before they will be received into the army or navy, and that railroad companies require their trainmen to pass a like examination. But to say that the ordinary farm or factory hand is refused employment because the sight of one eye is impaired, not only passes the domain of common knowledge, but in so far as our observation has extended it is untrue as a matter of fact.

It may be that the Compensation Act will have a tendency in the direction indicated in the opinion of the trial court, although it is not apparent why this should be so. However, accidents of this class are too infrequent and the Compensation Act has been in force too short a time to enable a court to say that it is a matter of common knowledge that the discrimination exists. A fact must be pretty well known and pretty obvious besides before it can be taken judicial notice of.

It is urged in the brief of counsel for the claimant that working at a drill-press is not an employment, that the claimant's ability to earn in some callings is impaired, that the law contemplates that he shall have compensation for the injury received, and that there was no intention to have this compensation "doled out with an apothecary's scales." The argument is plausible, but not convincing. Courts are no more above the law than are individuals. If judges are to perform the duties they have sworn to perform, they must leave the duty of enacting statutes to the legislature. In case of doubt as to the meaning of a statute they must construe it, but never, intentionally at least, amend it. The aim

in all cases should be to find out what the legislature really meant, and not to stretch or distort language so as to make the law as the court thinks it should be for the purposes of the individual case under consideration. It would be an easy matter to say in this case that there is some evidence to sustain the finding of the *Commission*. But unless we were able to point it out, it would reflect no credit on the court to say so.

*By the Court.*—The judgment appealed from is reversed, and the cause is remanded to the circuit court with directions to set aside the award of the *Industrial Commission* and to either remand the record to said *Commission* for further hearing or enter final judgment in plaintiff's favor, as the court may deem just.

Timlin, J. (*dissenting*). I am unable to agree with the majority decision in this case. It proceeds, first, upon the erroneous assumption that there was no evidence of future disability in the case except that derived from the books, pamphlets, and documents consulted by the *Commission,* the use of which is disapproved; second, upon the erroneous assumption that these were necessarily consulted as original evidence; and third, upon the erroneous view that orders of the *Commission* can be reversed for improper admission of evidence. It was in evidence that the claimant lost an eye, and in the exercise of common knowledge and observation the *Commission* was authorized to infer from this that his capacity to obtain employment was impaired. There is, in my opinion, no case made out for a reversal of the order of the *Commission* under sec. 2394—19, Stats., and the case of *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595, has no relevancy to the questions here presented.

Summed up, the majority decision means that where there is a visible, permanent injury consisting of the loss of a member, the *Commission* cannot upon this evidence, together

with the evidence of the kind of work at which the injured person was engaged at the time and the amount of wages received, decide upon the extent of the prospective or future impairment of his earning capacity because of his impaired opportunities for obtaining employment by reason of the disability. I think this is not only contrary to principle, but also that it materially impairs the efficiency of the *Industrial Commission*. The majority of the court must have arrived at the foregoing conclusion in order to hold that there was prejudicial error in making the investigation and consulting the records and documents referred to by the *Commission*. For surely the decisions of the *Commission* are not to be upset because they read not wisely but too extensively, if there are other facts in evidence in the case supporting their decision. I think a more liberal rule should apply to an administrative body of this kind than to a formal trial in court. In the latter case the jury might make this estimate "from the facts and circumstances in proof and by considering them in connection with their knowledge, observation, and experience in the business affairs of life." *North Chicago St. R. Co. v. Fitzgibbons,* 180 Ill. 466, 54 N. E. 483; *Baltimore & O. S. W. R. Co. v. Keck,* 84 Ill. App. 159; *Houston & T. C. R. Co. v. Harris,* 30 Tex. Civ. App. 179, 70 S. W. 335; *Feinstein v. Jacobs,* 15 Misc. 474, 37 N. Y. Supp. 345; 8 Am. & Eng. Ency. of Law (2d ed.) 641, 642.

In *Rosenkranz v. Lindell R. Co.* 108 Mo. 9, 18 S. W. 890, 32 Am. St. Rep. 588, it is said to be well settled that prospective damages to adults on account of impairment of earning capacity in the future is a proper element of damages, and that proof should be made of previous physical condition and ability to labor or follow his usual avocation, as well as of his condition since the injury, to enable the jury to properly find the pecuniary damage. I think this is all the basis for such finding that is considered necessary. That was a case of injury to a child four years old, and the jury were

confronted with the task of determining the extent of impairment of his earning capacity after he reached the age of twenty-one and in case he reached that age.    It is said:

"It is properly held in such case, in the absence of the existence of direct evidence, that much must be left to the judgment, common experience and 'enlightened conscience of the jurors, guided by the facts and circumstances in the case.' "

In *Fisher v. Jansen,* 128 Ill. 549, 21 N. E. 598, citing *Chicago v. Major,* 18 Ill. 349, it is said:

"In this, as in all other cases, it was proper for the jury to exercise their own judgment upon the facts in proof, by connecting them with their own knowledge and experience, which they are supposed to possess in common with the generality of mankind."

See, also, *Chicago v. Scholten,* 75 Ill. 468, 471, and other cases cited and commented on in *Fisher v. Jansen, supra.*

We also permit a jury, from evidence of the mere fact of wrongful act causing death, relationship of the beneficiary, age and financial circumstances of the deceased, to award damages for prospective loss of support and for the probable loss of a legacy or devise of property not yet earned and which may never be earned by the decedent.    *Castello v. Landwehr,* 28 Wis. 522.

Where the injury resulted in the loss of a limb or member and that result is patent, and the jury have the plaintiff's age, occupation, and former earnings before them, they have, I think, quite uniformly been allowed to estimate from these data the probable future impairment of earning power.    Impairment of capacity to obtain employment is impairment of earning capacity.    I recall cases in this state where an infant of tender years, on proof merely of his age and injuries, was allowed to recover for impairment of earning power which would begin far in the future after the infant had arrived at the age of twenty-one.    In cases in which the injured party may or may not be restored to health, it is necessary to

produce evidence that the disability existing at the trial will be reasonably certain to continue.   *Block v. Milwaukee St. R. Co.* 89 Wis. 371, 61 N. W. 1101.   But I do not think this rule applies where there is a loss of an eye or an arm or a foot.

I do not think the *Commission* committed any reversible error in examining the books and papers mentioned.   These were not in the nature of evidence, but merely argumentative and advisory upon the other facts above referred to and properly before the *Commission.*   I think the employment in which the servant was working at the time of the accident is referred to in the statute more for the purpose of fixing the measure of compensation than for any other purpose.   Even if they were evidence and incompetent, this would not be ground for reversal.   I am unable to understand how the order in question of the *Commission* can be reversed under a statute which forbids the court to set aside the order of the *Commission* unless the latter acted outside of or in excess of its power, or that the order was procured by fraud, or that the findings of fact of the *Commission* do not support the order.   The second and third grounds are entirely wanting, so that this order must have been reversed upon the ground that the *Commission* acted outside or in excess of its power in awarding compensation for impaired earning capacity, merely because, having the evidence of the nature of the injury, the occupation, age, and earnings of the servant, the *Commission* read up concerning what other administrative *quasi*-judicial or judicial tribunals did with reference to amount under similar circumstances.

Justices SIEBECKER and KERWIN concur in this dissent.