# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## MARCH TERM, 1910.

---

### 2050. CENTRAL OF GEORGIA RAILWAY COMPANY v. BUTLER MARBLE AND GRANITE COMPANY.

1. The judgment must be amended by striking therefrom the sum returned as interest. "Where a suit is brought for damages arising from the destruction of property, and there is a basis of calculation' as to the value, interest is not recoverable eo nomine. But the jury may consider the length of time damages have been withheld, the character of the tort, the conduct of the defendant, and all the circumstances of the transaction, and may in their discretion increase the amount of damages by adding to the value of the property destroyed a sum equal to the interest on such value, the entire sum found being returned as damages, and not exceeding the amount sued for."

2. A custom imposing conditions as to the hours within which shipments will be received or forwarded by a carrier becomes immaterial if the conditions are waived and the shipment is in fact accepted by the carrier for the purpose of transportation and delivery to the consignee.

3. While a common carrier may make a contract of affreightment embracing an actual and bona fide agreement as to the value of the property accepted for transportation, a mere general limitation as to value, expressed in a bill of lading, which is clearly nothing more than an arbitrary preadjustment of the measure of damage in case of loss, will not, in any case, exempt a carrier from liability for the true value of a shipment lost or destroyed by the negligence of the carrier.

4. Even where there is an attempt to limit liability in return for a lower rate of freight, the question as to whether there was an actual bona fide valuation of a shipment accepted by the carrier for transportation, or a mere effort arbitrarily to limit liability, is one of fact, and for the jury. In the present case the jury were authorized to find that the valuation fixed in the bill of lading was not intended or understood to represent the mutual conclusion of the parties that the valuation mentioned had reference to the real or actual value of the shipment. Where there is an

arbitrary fixing of value, before an inspection of the goods and without any regard to their real worth, the assumed valuation may be treated as a mere attempt in advance to limit liability.

5. (*a*) The term "released," as a legal phrase used in reference to a shipment, means no more than that the carrier is relieved from losses not occasioned by his negligence.

(*b*) The fact that a rate given to a shipper may be in violation of the rates fixed by the interstate-commerce commission does not affect the liability of the carrier to respond, or the right of the shipper to recover, for the loss or destruction of property entrusted to the carrier for shipment, though both the carrier and the shipper might be subject to criminal prosecution, and though the carrier might recover, in an action brought for that purpose, the charges fixed by the commission.

6. So far as the ultimate effect upon the result of the trial is concerned, an objectionable feature in the pleadings can be as effectually removed by the charge of the court as by sustaining a demurrer thereto; and therefore, though the judgment upon the demurrer be erroneous, the error in such a case becomes harmless.

7. There is no merit in any of the exceptions to the charge of the court. The pertinent contentions of both parties were clearly and fairly presented, and the jury properly instructed in the law applicable to every phase of the case.

8. The assignments of error upon the admission of testimony do not require the granting of a new trial.

(*a*) The admission of testimony which was merely the conclusion of a witness could not have harmed the defendant; because there was ample legal evidence to sustain the inference of the witness.

(*b*) If objection is made to certain testimony as a whole, and a portion of it is legal and competent, the court is not required to sustain the objection.

DECIDED JULY 5, 1910.

Action for damages; from city court of Americus—Judge Crisp. June 14, 1909.

The Butler Marble & Granite Company brought suit against the Central of Georgia Railway Company to recover the actual value of certain shipments of monument marble consigned to four different customers, and the penalty for failure to adjust the claim in the time prescribed in the act of 1906 (Acts 1906, p. 102). The petition alleged, that the goods were delivered to the railway company and accepted for transportation, but were never delivered to the consignees or to the plaintiff, and that the defendant claimed that they were destroyed by fire while in its possession. The plaintiff alleged that the loss was due entirely to the negligence of the defendant's employees. The amounts sued for were, $441.78 principal, interest at 7 per cent., and $50 penalty. The defendant demurred to par-

agraphs 3, 5, and 6 of the petition, and contended that the act of 1906, supra, is unconstitutional, that the city court of Americus has no jurisdiction as to the recovery of the penalty, and that the plaintiff.could not recover as to any shipment destined to a point without the State of Georgia. The defendant in its answer denied that 'it was guilty of negligence, and alleged that the fire originated off its premises, and was communicated to the car, without any negligence on its part. The defendant further pleaded that the plaintiff fixed the value of the marble at 20 cents per cubic foot, and thereby obtained a reduced rate of freight; that the defendant agreed to accept the valuation stated, and issued its bill of lading at that valuation, at the plaintiff's instance, and, therefore, if the plaintiff was entitled to recover anything, it could recover, at the value of the marble, an amount in excess of the agreed value, to wit, $13, which the defendant averred it had tendered and continued to tender to the plaintiff. By way of replication to the answer of the defendant, the plaintiff, in an amendment to the petition, alleged, that neither the plaintiff nor its agents misrepresented the true value of the articles shipped, and that the agent and employees of the railroad company knew that 20 cents per cubic foot was not a reasonable valuation; that the amount specified in the bill of lading was purely fictitious, and only represented an attempt on the part of the carrier to limit its liability to an arbitrary amount; and that the loss was due to the negligence of the defendant, and therefore the stipulation by which it sought to limit its liability was not binding on the plaintiff. The amendment further set out that the defendant, instead of promptly shipping the goods to their destination, pulled the car which contained them "on the side-track which runs along the Americus Compress Company;" that the compress was full of jute bagging and lint cotton, which are very combustible materials, and that these conditions were fully known to the employees of the defendant; that a portion, if not all, of the compress was on the right of way of the defendant, and the combustibles mentioned were in close proximity to the main inside tracks of the defendant, where engines were passing and repassing, and these combustibles were subject to be ignited at any time; yet the defendant allowed the car containing the plaintiff's goods to be pulled in on this side-track, on which the compress company loaded and un-

loaded its cotton, and to remain there over Sunday (there being no freight-trains run on Sunday), where it was destroyed by fire.

The trial judge overruled the demurrer, as to so much of the petition as referred to the recovery of the statutory penalty, and also, over the defendant's objections, allowed the amendment to which we have referred. The trial resulted in a verdict in favor of the plaintiff for $441.78 principal, and $19 interest. The defendant excepts to the refusal of a new trial.

*E. A. Hawkins,* for plaintiff in error.

*W. P. Wallis,* contra.

RUSSELL, J.  (After stating the foregoing facts.)

1.  We find no error in the judgment refusing a new trial, though the judgment must be amended. Under the rulings in *Western & Atlantic R. Co.* v. *Brown,* 102 *Ga.* 13 (29 S. E. 130), and in *Central R. Co.* v. *Hall,* 124 *Ga.* 322 (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. R. 170), the interest is not recoverable eo nomine. While the jury may consider the length of time the damages have been withheld, and all other circumstances connected with the transaction, and may, in their discretion, increase the amount of damages by adding to the value of the property destroyed a sum equal to the interest on such value, the entire sum found must be returned as damages, and not exceed the amount sued for. The judge might have sent the jury back to consider whether they desired to include as damages the amount mentioned by them as interest in their finding, if the sum total would not have exceeded the amount for which the plaintiff sued. But the mere fact that the jury found interest eo nomine is not sufficient ground for reversing the judgment. The forfeiture of the interest which the jury thought the plaintiff was entitled to recover is a sufficient penalty, and we therefore direct that the judgment be amended by striking therefrom the $19 specified as interest.

2.  In the evidence it is not disputed that the four several shipments of monument marble delivered by the plaintiff to the defendant were destroyed by fire while in the custody of the defendant. Whether the plaintiff complied with the custom which requires shippers, if they desire a car to be forwarded on a certain day, to deliver the shipment to the defendant before 9 o'clock, and whether the defendant was unable to forward the shipment, because it had no freight-train on Saturday after the time it received the ship-

ment, and no freight-trains except for live stock and perishables on Sunday, is wholly immaterial in this case, because the railroad company accepted the shipment and gave its bill of lading for it, and the marble was in proper condition to be transported. It might have declined to accept the shipment in violation of custom at the particular time, but there is no dispute that the employees of the defendant carried the car containing the marble from the Seaboard Air-Line Railway's transfer track to its own side-track near the Americus compress. It waived custom and accepted the shipment for transportation. The real issue in the case, therefore, turns upon the question whether the defendant carrier is entitled to have its liability diminished in accordance with the terms of its continuing tender, and in accordance with the valuation of the shipment mentioned in the bill of lading. If so, the plaintiff was only entitled to recover $13, instead of the amount of the verdict actually rendered.

3. It is insisted by the learned counsel for the plaintiff in error that the bills of lading were prepared by an agent of the marble company, and that by reason of the low valuation given the marble shipped, and the fact that it was billed "released," the shipper obtained a lower rate than it would otherwise have been entitled to; also that the rate specified was one prescribed in the classification and rates of freight fixed by the railroad commission; also, it being a violation of law and in contravention of the "Hepburn act," regulating interestate commerce, for a carrier to charge or a shipper to obtain a higher or lower rate than that fixed, and the shipments in question having been made by classification fixed by law, that the plaintiff's right to recover was limited to the classification selected. The controlling question is whether there was a bona fide valuation, or whether the assumed value was arbitrarily reached. We consider this as the only question to be viewed, because the evidence fails to show that the contents of the car were unknown to the carrier; for the agent of the company testifies that he knew the shipments going south from the marble company were monumental stuff. Each bill of lading specified the shipment as being marble, either boxed or crated. The value was fixed at 20 cents per cubic foot, and the number of cubic feet in each shipment was specified.

In *Central Ry. Co.* v. *Hall,* supra, it was held that "a railway company, in its capacity as a common carrier, may, as a basis for

fixing its charges and limiting the amount of its corresponding liability, lawfully make with a shipper a contract of affreightment embracing an actual and bona fide agreement as to the value of the property to be transported; and in such case, when loss, damage, or destruction occurs, the shipper will be bound by the agreed valuation. But a mere general limitation as to value, expressed in a bill of lading, and amounting to no more than an arbitrary preadjustment of the measure of damages, will not, though the shipper assent in writing to the terms of the document, serve to exempt a negligent carrier from liability for the true value." It is a proposition undisputed in this State, so far as we are aware, that a carrier can not, even by special contract, exempt himself from liability for the loss of goods entrusted to him, where a loss arises from his negligence or that of his servants.

4. And even where there is an attempt to limit liability, in return for a lower rate of freight, and there is an issue of fact as to whether there was an actual bona fide valuation or a mere arbitrary effort to limit liability, the question is one for the jury. The case at bar is quite similar as to its facts to that of *Louisville & Nashville R. Co.* v. *Venable*, 132 *Ga.* 501 (64 S. E. 466), in which some of the bills of lading, as in the present case, expressed a value of 20 cents per cubic foot, and others erroneously 40 cents per cubic foot. In delivering the opinion of the court Justice Atkinson said: "Especially did the court not err 'in not holding that the plaintiffs were limited in recovery of damages to the value of the stone as set out in the bills of lading received by the plaintiffs from the defendants.' "

5. Under the ruling in *Georgia Southern & Fla. Ry. Co.* v. *Johnson*, 121 *Ga.*, 231 (48 S. E. 807), where goods are shipped "released," the burden is upon the carrier to show that the loss was within the exemption, and not occasioned by his own negligence. The term "released," as a legal phrase, is construed to mean no more than that the carrier is relieved from losses not occasioned by his negligence. In the case just cited the judgment was reversed because it appeared that there was a bona fide valuation, and that the contents of the shipment (or at least the value of the contents) were entirely unknown to the carrier, as well as that the valuation was fixed solely by the shipper; but in passing upon the question it was held that where the carrier arbitrarily fixes the value of a

consignment, or where, by the terms of the bill of lading, there is an arbitrary fixing of value before the goods are inspected, without any regard to their real worth, the assumed valuation in either event must be treated as a mere attempt in advance to limit liability. Applying these rules to the present case, we find that while it is true that the agent of the shipper inserted in the bills of lading the words: "Rel. val. at' 20 cents cu. ft.," this valuation bore no relation whatever to the true value of the shipment, and that the jury were authorized to find not only this to be true, but that the agents of the defendant company, from having made very numerous shipments of the same kind for the plaintiff prior to that time, were fully aware of the disparity between the valuation mentioned in the bill of lading and the true worth of the shipment. It was not a case of a segregated instance in which the plaintiff for the first time tendered to the defendant a shipment of marble at a valuation of 20 cents per cubic foot. The evidence was ample to authorize the jury to find that the value of the consignment was merely arbitrarily fixed; in other words, that there was no bona fide effort, either on the part of the shipper or of the carrier, to value the shipment. This court takes judicial cognizance of the classification and rates of the railroad commission (*Central Ry. Co.* v. *Cook,* 4 *Ga. App.* 701 (62 S. E. 464)), but the question in this case is not affected by the fact that there is a rate prescribed by the commission for monuments and gravestones with a valuation limited to 20 cents per cubic foot. This rule might apply to an honest agreement as to the valuation of marble (if there be any worth 20 cents per cubic foot), but in this case there is no evidence whatever that the parties conferred about the value of this marble or considered it at all. The jury were obliged to find that the valuation was arbitrary.

Under the ruling in *G. S. & F. Ry. Co.* v. *Johnson,* supra, and the unbroken line of decisions holding that the value of the shipment can not be arbitrarily fixed as a mere prearrangement against liability, it must be held that the rate announced in the classification of the railroad commission had no application to such a state of facts as that presented in this case. It appears here that the freight on marble from Marietta to Americus is 26 cents per cubic foot, and presumably it is much more on marble from Vermont. It is possible that the classification of the railroad commission might apply as a true measure of value to shipments from some points where the

initial freight rate is less than 20 cents per cubic foot, but it certainly could not have been intended to apply, and can not apply as a fair valuation, to a shipment where even the cost of transportation is greater than the agreed valuation.

Nor is the result affected by the fact that the rate given to the shipper by the carrier may have been in violation of the rates fixed by the interstate-commerce commission and required to be published. This might subject either or both of the parties to a criminal prosecution, or, as pointed out in the case of *Georgia Railroad* v. *Creety*, 5 *Ga. App.* 427 (63 S. E. 528), would allow the carrier to sue for and to cover the charges fixed by the interstate-commerce commission in an action brought for that purpose. The amount of freight charged for the carriage of a shipment, however, has nothing to do with the right of a plaintiff to recover for the loss or destruction of the property he has entrusted to a carrier for shipment, except in so far as the charge for freight may be a circumstance showing that there was a bona fide valuation of the shipment.

6. It is unnecessary for us to determine whether the trial judge ruled correctly upon the demurrer which sought to strike from the petition that portion thereof which related to a recovery of the penalty provided by the act of 1906; because the judge charged the jury that under the evidence submitted, the plaintiff was not entitled to recover the penalty; and the jury did not find the defendant subject to the penalty. In view of the judge's instructions upon that subject, the defendant's cause could not have been prejudiced. So far as its ultimate effect upon the result of a trial is concerned, an objectionable feature in the pleadings can be as effectually removed by the charge of the judge as by sustaining a demurrer thereto. The error then becomes harmless. The court's failure to sustain a demurrer, even though the demurrer be well founded in law, is not an error which affords just ground for complaint, if the charge of the judge to the jury effectually accomplishes the end sought to be attained by the demurrer, and precludes the plaintiff from the relief to which the defendant objected, or withholds from the plaintiff a defense to which he is not entitled by law.

7. The instructions of the court upon the effect of an arbitrary valuation of property received by a carrier for transportation, which

are excepted to, so far from being objectionable, are clear, definite, and pertinent, and present not only the view that an arbitrary valuation, if the jury found it to be such, would not relieve the defendant from its liability, if the jury thought it otherwise liable for the destruction of the property, but present with equal fairness the view that if there was a bona fide valuation of the shipment, the liability of the carrier would be limited to that. There was no evidence in this case that the agent of the shipper overreached or misled the employees of the carrier, or that there was any concealment of the nature of the shipment.

8. Strictly considered, it was perhaps erroneous to have allowed one of the witnesses for the plaintiff to give to the jury his conclusion that "no fault or negligence whatever, on the part of the Butler Marble & Granite Company, occasioned the damage to them," but the error is not such as to have called for the granting of a new trial. There is no evidence whatever, to dispute the testimony of the witness, although it may be a conclusion. All of the testimony, every fact in the case, confirms his statement. There is certainly no contention that the plaintiff had anything to do with placing the car at the side-track near the compress, and no dispute as to the fact that it was burned because of its proximity to the compress.

The judge did not err in overruling the objection to certain testimony of C. A. Snyder, a witness for the plaintiff; for the reason that the objection was made (as appears from the record) to that testimony as a whole, and, while a portion of it might have been subject to the objection urged, many of the statements included in it were legal and competent. No effort was made to separate the objectionable portion from the legal testimony; and, under the well-settled rule, the duty of making this separation devolved upon the objector. After a careful review of the record, we are satisfied that the controlling issues in the case were properly submitted to the jury, that the verdict is sustained by ample evidence, and that the minor errors to which we have referred had no effect upon the result.

With the direction that the judge of the city court amend the verdict and the judgment so as to exclude the amount returned as interest, the judgment is affirmed.

*Judgment affirmed, with direction.*